Donald L. Ridge (State Bar No. 132171)
Email: dridge@mpplaw.com
Hubert T. Lee (State Bar No. 297548)
Email: hlee@mpplaw.com
**MORRIS POLICH & PURDY LLP**
1055 West Seventh Street
Twenty-Fourth Floor
Los Angeles, California 90017
Telephone: (213) 891-9100
Facsimile: (213) 488-1178

David M. Kelly (Of Counsel)
Email: david.kelly@kelly-ip.com
Stephanie H. Bald (Of Counsel)
Email: stephanie.bald@kelly-ip.com
**KELLY IP, L.L.P.**
1919 M Street, N.W. Suite 610
Washington, DC 20036
Telephone: (202) 808-3570
Facsimile: (202) 354-5232

Attorneys for Plaintiffs
ASTON MARTIN LAGONDA LIMITED and
ASTON MARTIN LAGONDA OF NORTH AMERICA, INC.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ASTON MARTIN LAGONDA LIMITED and ASTON MARTIN LAGONDA OF NORTH AMERICA, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>HENRIK FISKER, HF DESIGN LLC, GALPIN MOTORS, INC., and GALPIN AUTO SPORTS, LLC,<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR TRADEMARK INFRINGEMENT, FALSE DESIGNATION OF ORIGIN, DILUTION, FALSE ADVERTISING, INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONSHIPS, AND INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs Aston Martin Lagonda Limited and Aston Martin Lagonda of North America, Inc. (collectively "Plaintiffs" or "Aston Martin") bring this action against

Defendants Henrik Fisker, HF Design LLC, Galpin Motors, Inc., and Galpin Auto Sports, LLC (collectively, "Defendants").  Aston Martin alleges as follows, upon actual knowledge with respect to itself and its own acts, and upon information and belief as to all other matters:

## NATURE OF THE ACTION

1.   This is an action for trademark infringement under 15 U.S.C. § 1114(1), trademark infringement and false designation of origin under 15 U.S.C. § 1125(a), trademark dilution under 15 U.S.C. § 1125(c), false advertising under 15 U.S.C. § 1125(a), trademark dilution under California Business & Professions Code § 14247, unfair competition under California Business & Professions Code §§ 17200, 17500 *et seq.*, intentional interference with contractual relationships, interference with prospective economic advantage, and common-law trademark infringement and unfair competition.

2.   Plaintiffs manufacture Aston Martin automobiles—the iconic automobile brand featured in five decades of James Bond films—and sell them under the famous ASTON MARTIN trademark and wings logo. Aston Martin automobiles are known for their inimitable styling, particularly Aston Martin's distinctive "S-curve" grille and side vent design, which both have been used for 50+ years and are the subject of federal trademark registrations as well as strong common law trademark and trade dress rights. As a former design director at Aston Martin, Defendant Fisker has long known about the power and value of Aston Martin's brands and proprietary designs.  Fisker thus approached Aston Martin in November 2014 about collaborating on a proposal named "Project Thunderbolt," which involved Fisker displaying a "reimagined" Aston Martin automobile at the LA Auto show several weeks later.

3.   As proposed by Fisker, Project Thunderbolt entailed Fisker using one of Aston Martin's cars as the platform to design a car that retained a number of Aston Martin's proprietary designs and trademarks.  Aston Martin told Fisker that it would not participate in Project Thunderbolt as proposed, and that Fisker's display of the

Thunderbolt prototype car publicly would violate Aston Martin's intellectual property rights.  On March 14, 2015, however, at a popular automotive show in Florida, Fisker nevertheless unveiled a Thunderbolt prototype car that violates Aston Martin's intellectual property rights in many ways.  Specifically, the Thunderbolt prototype car featured confusingly similar variations of Aston Martin's grille and side vent trademarks as well a facsimile of its wings logo, all of which infringe Aston Martin's trademark rights.  But this was only part of Fisker's calculated plan to improperly exploit Aston Martin's proprietary rights and free-ride off its reputation for his own gain.  Fisker has also employed and continues to employ illegal "bait and switch" marketing tactics to sell his Thunderbolt prototype car.  Fisker's advertising pictures a vehicle with confusingly similar variations of Aston Martin's grille and side vent trademarks and wings logo, but the vehicle Fisker actually intends to sell is a different car entirely (which also infringes Aston Martin's proprietary rights).  Additionally, Fisker has repeatedly referred to the Thunderbolt prototype car as being based on Aston Martin's VANQUISH automobile, when that is simply not true.  Fisker has even gone so far as to intentionally and willfully induce a long-time Aston Martin dealer into participating in his scheme, thereby causing the dealer to breach its dealer's agreement with Aston Martin to sell and promote only genuine Aston Martin vehicles and to not use Aston Martin's trademarks to sell non-Aston Martin automobiles.  Fisker's motives are clear—by associating the Thunderbolt with an Aston Martin dealer, consumers will be further duped into believing that the Thunderbolt is an authorized and genuine Aston Martin automobile, even though Fisker never obtained Aston Martin's permission to publicly display the Thunderbolt, and Aston Martin repeatedly and strenuously objected to Fisker's promotion and sale of the Thunderbolt.

4.     Not surprisingly, although it has only been a week since Fisker introduced the Thunderbolt prototype car, many automotive enthusiasts and the press have already mistakenly identified Fisker's Thunderbolt as an Aston Martin vehicle because of the Aston Martin design features Fisker took from Aston Martin and Fisker's deceptive and

misleading advertising used to promote and sell his vehicles—advertising that is chock-full of Aston Martin's trademarks, statements closely associating the unauthorized Thunderbolt prototype car with Aston Martin's authorized dealer and the authorized Aston Martin vehicles sold by the dealer, and misstatements about the characteristics of the prototype, including regarding the "donor" car used.  Unless and until Fisker's infringing activities and false and deceptive advertising are enjoined, Aston Martin will continue to suffer damage and irreparable harm.

## PARTIES

5.     Plaintiff Aston Martin Lagonda Limited ("AML") is a United Kingdom corporation having its place of business at Banbury Road, Gaydon Warwick, United Kingdom CV350DB.

6.     Plaintiff Aston Martin Lagonda of North America, Inc. ("AMLNA") is a Connecticut corporation having its place of business at 9920 Irvine Center Drive, Irvine, California 92618.

7.     Defendant Henrik Fisker ("Fisker") is an individual residing at 8500 Burton Way, #401, Los Angeles, California 90048.

8.     Defendant HF Design LLC ("HF Design") is a California limited liability company having its place of business at 8500 Burton Way #401, Los Angeles, California 90048.  Henrik Fisker and HF Design LLC are collectively referred to as "Fisker."

9.     Defendant Galpin Motors, Inc. ("Galpin Motors") is a California corporation having its place of business at 15505 Roscoe Blvd., Sepulveda, California 91343.

10.     Defendant Galpin Auto Sports LLC ("GAS") is a California limited liability company having a place of business at 15505 Roscoe Blvd., North Hills, California 91343.  Defendants Galpin Auto Sports LLC and Galpin Motors, Inc. are collectively referred to as "Galpin."

///

///

///

- 4 -

**JURISDICTION AND VENUE**

11.     This Court has jurisdiction over the subject matter of this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338(a) and (b).  This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367 because those claims are so related to its federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

12.     This Court has personal jurisdiction over the Defendants and venue is proper in the Central District of California pursuant to 28 U.S.C. § 1391(b) and (c).  Defendants Fisker, HF Design, Galpin Motors, and GAS reside in this District and transact business in this District, including by offering and promoting the automobiles that infringe Aston Martin's trademarks and by engaging in false advertising.  In addition, Aston Martin's claims arise in part in this District, and a substantial portion of the activity about which Aston Martin complains has taken place in this District.

**ASTON MARTIN AND ITS PRODUCTS**

13.     Founded in 1913, Aston Martin is a world-renowned luxury automobile company that has manufactured some of the most iconic automobiles in history.

14.     Aston Martin, through its predecessors-in-interest, related companies, and licensees (collectively, "Aston Martin"), has used the ASTON MARTIN mark and name (the "ASTON MARTIN Mark") in commerce with automobiles and related products for many decades.

15.     Over the course of many decades, Aston Martin has used the wings logos and marks shown below and variations thereof (collectively, "Wings Logo") in commerce with automobiles and related products.

 

16.     Over the course of the past six decades, Aston Martin has used in commerce the distinctive grille trademarks and trade dress shown below and variations thereof (collectively, the "Grille Mark") in connection with automobiles.  The "S curve" forming

the aperture of the Grille Mark is highly distinctive and has long been uniquely associated with Aston Martin.





1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28







17.   For many decades, Aston Martin has used in commerce the distinctive side vent trademarks and trade dress shown below and variations thereof (collectively, the "Side Vent Mark") in connection with automobiles.



**Aston Martin Vantage**



**Aston Martin DB9**



**Aston Martin Vanquish**

18.  Since at least as early as 2001, Aston Martin has used in commerce the VANQUISH mark ("VANQUISH Mark") in connection with automobiles and related products.

19.  Aston Martin's automobiles have long been extensively advertised throughout the United States in connection with the ASTON MARTIN Mark, Wings Logo, Grille Mark, Side Vent Mark, and VANQUISH Mark (collectively, the "AML Trademarks") through virtually every type of media, including television, radio, print publications, the Internet, and product placements.  Aston Martin has spent many millions of dollars advertising and promoting its automobiles in commerce in connection with the AML Trademarks.

20.  For more than 50 years, Aston Martin's AML Trademarks and automobiles have been prominently featured in films. Most famous is the long association with the popular and award-winning James Bond film series, including *Goldfinger*, *Thunderball*, *On Her Majesty's Secret Service*, *Diamonds Are Forever*, *The Living Daylights*, *Goldeneye*, *Tomorrow Never Dies, Die Another Day*, *Casino Royale*, *Quantum of Solace*, and *Skyfall*. In December 2014, Aston Martin unveiled its new DB10 automobile on the "007" stage at Pinewood Studios.  The DB10 model will be featured in the upcoming James Bond movie *SPECTRE.*  The AML Trademarks and Aston Martin automobiles have also appeared in widely-seen films and TV shows in the United States including, among others, *Catch Me If You Can, Transformers: Age of Extinction, The Other Woman, The Amazing Spiderman, The Purge: Anarchy, Top Gear, Jay Leno's Garage, Desparate Housewives, NCIS LA, CSI, The Mentalist, Khloe and Kourtney take the Hamptons,* and *Entourage*. These shows expose countless viewers to the AML Trademarks.

21.  For decades, Aston Martin and the AML Trademarks also have received extensive unsolicited media attention and publicity from national, regional, and local media outlets, including widely circulated publications such as *Los Angeles Times*, *The New York Times*, *The Wall Street Journal*, *The Washington Post*, *Chicago Tribune*, and

*USA Today.*

22. Aston Martin and its automobiles bearing and/or sold under the AML Trademarks have garnered additional publicity and media attention in the United States by receiving numerous awards and accolades including, for example, Car of the Year 2014 *Playboy Magazine*; Car of the Year 2014 by the *Robb Report* for the Vanquish Volante and in 2004 for the DB9; Best of the Best winner by *Robb Report* 2013; Car of the Year of 2013 in the Most Fascinating Sports Car category by *BBC Autos*; the GOOD DESIGN Award by The Chicago Athenauem: Museum of Architecture and Design in North America; and Most Beautiful Car of the Year by *Esquire Magazine* in 2010.

23. By virtue of the registration, extensive use, and promotion of Aston Martin's AML Trademarks, and the commercial success and publicity of Aston Martin and its products, consumers have long recognized Aston Martin as the source of the automobiles marketed in connection with the distinctive AML Trademarks, and Aston Martin's ASTON MARTIN Mark has been famous to the consuming and general public for years.

## ASTON MARTIN'S TRADEMARKS

24. In addition to its strong common-law rights, Aston Martin owns the following federal trademark registrations for the ASTON MARTIN Mark in the U.S., among others:

| MARK | REG. NO. / REG. DATE | FILING DATE | FIRST USE DATES | PRODUCTS/SERVICES |
|------|----------------------|-------------|------------------|-------------------|
| ASTON MARTIN | 0840338 6/24/2008 | 2/11/1966 | 44(e) | Automobiles and parts thereof in Class 12. |
| ASTON MARTIN | 1625214 11/27/1990 | 2/10/1989 | 1949 (anywhere) 1954 (US) | Services for the reconstruction, repair and maintenance of motor vehicles in Class 37. |
| ASTON MARTIN | 4024407 9/13/2011 | 6/24/2009 | 44(e) | Land vehicles and other goods in Class 12. Building construction and |

| MARK | REG. NO. / REG. DATE | FILING DATE | FIRST USE DATES | PRODUCTS/SERVICES |
|---|---|---|---|---|
| | | | | repair; repair, restoration, maintenance, reconditioning, diagnostic tuning, cleaning, painting and polishing services, all in respect of land vehicles or parts and fittings for land vehicles in Class 37.<br><br>(Also includes goods and services in Classes 3, 6, 7, 8, 9, 11, 14, 16, 18, 20, 21, 24, 25, 26, 27, 28, 29, 30, 32, 33, 34, 35, 36, 39, 41, and 43) |

25.    The federal trademark registrations listed above are prima facie evidence of Aston Martin's ownership and the validity of the ASTON MARTIN Mark and Registration Nos. 0840338 and 1625214 are incontestable and thus constitute conclusive evidence of Aston Martin's ownership and the validity of the ASTON MARTIN Mark.

26.    Aston Martin owns the following federal trademark registrations for the Wings Logo in the U.S.:

| MARK | REG NO. / REG. DATE | FILING DATE | FIRST USE DATES | PRODUCTS/SERVICES |
|---|---|---|---|---|
|  | 4193150<br><br>8/21/2012 | 7/19/2011 | 44(e) | Motor land vehicles and parts and fittings therefor and other goods in Class 12.<br><br>Repair, restoration, maintenance, reconditioning, cleaning, painting and polishing services for motor vehicles; vehicle repair; mechanical tuning of automobiles in Class 37.<br><br>(Also includes goods and services in Class 9, 14, 16, |

| MARK | REG NO. / REG. DATE | FILING DATE | FIRST USE DATES | PRODUCTS/SERVICES |
|---|---|---|---|---|
| | | | | 18, 25, 28, and 35) |
|  | 1409345 9/16/1986 | 4/16/1984 | 44(e) | Automobiles and structural parts thereof in Class 12. |
|  | 1333643 4/30/1985 | 4/23/1984 | 3/1/1984 | Services in relation to the repair and maintenance of motor land vehicles in Class 37. |
|  | 4024406 9/13/2011 | 6/24/2009 | 44(e) | Land vehicles and other goods in Class 12. Building construction and repair; repair, restoration, maintenance, reconditioning, diagnostic tuning, cleaning, painting and polishing services, all in respect of land vehicles or parts and fittings for land vehicles in Class 37. (Also includes goods and services in Classes 3, 6, 7, 8, 9, 11, 14, 16, 18, 20, 21, 24, 25, 26, 27, 28, 29, 30, 32, 33, 34, 35, 36, 39, 41, and 43) |
|  | 4337071 5/21/2013 | 12/13/2011 | 44(e) | Motor land vehicles and parts and fittings therefor and other goods in Class 12. (Also includes services in Classes 35 and 41) |

27.     The federal trademark registrations listed above are prima facie evidence of Aston Martin's ownership and the validity of the Wings Logo, and many of these registration are incontestable and thus constitute conclusive evidence of Aston Martin's ownership and the validity of the Wings Logo.

28.     Aston Martin owns the following federal trademark registration for the Grille Mark in the U.S.:

| MARK | REG. NO. / REG. DATE | FILING DATE | FIRST USE DATES | PRODUCTS/SERVICES |
|---|---|---|---|---|
|  | 3147659 9/26/2006 | 2/9/2005 | 12/31/1950 | Motor vehicles, namely, automobiles and structural parts therefor in Class 12. |

29.     The federal trademark registration listed above constitutes prima facie evidence of Aston Martin's ownership and the validity and distinctiveness of the Grille Mark and is incontestable and thus constitutes conclusive evidence of Aston Martin's ownership and the validity of the Grille Mark.

30.     Aston Martin owns the following federal trademark registration for the Side Vent Mark in the U.S.:

///
///
///
///
///
///
///

| MARK | REG. NO. / REG. DATE | FILING DATE | FIRST USE DATES | PRODUCTS/SERVICES |
|---|---|---|---|---|
|  | 3191160<br><br>1/2/2007 | 2/9/2005 | 12/31/1954 | Motor vehicles, namely, automobiles and structural parts therefor in Class 12. |

31.    The federal trademark registration listed above is prima facie evidence of Aston Martin's ownership and the validity and distinctiveness of the Side Vent Mark and is incontestable and thus constitutes conclusive evidence of Aston Martin's ownership and the validity of the Side Vent Mark.

32.    Aston Martin owns the following federal trademark registration for the VANQUISH Mark in the U.S.:

| MARK | REG. NO. / REG. DATE | FILING DATE | FIRST USE DATES | PRODUCTS/SERVICES |
|---|---|---|---|---|
| VANQUISH | 2511756<br>11/27/2001 | 1/25/2000 | 44(e) | Motor land vehicles, namely, automobiles and structural parts therefor and other goods in Class 12. |

33.    The federal trademark registration listed above is prima facie evidence of Aston Martin's ownership and the validity of the VANQUISH Mark and is incontestable and thus constitutes conclusive evidence of Aston Martin's ownership and the validity of the VANQUISH Mark.

///

///

## DEFENDANTS' UNLAWFUL ACTIVITIES

### A.   Fisker, Aston Martin's Objections to Fisker's Thunderbolt Prototype Car, and the Los Angeles Auto Show

34.   Fisker is a well-known car designer who has held high-level design positions at some of the world's leading luxury-car manufacturers, including BMW, Ford, and Aston Martin.

35.   From approximately 2001-2004, Fisker worked at Aston Martin (which, at the time, was owned by Ford), including as Aston Martin's Design Director.  In this capacity, Fisker served in a management role for Aston Martin.

36.   While at Aston Martin, Fisker directed a number of design projects relating to Aston Martin automobiles and became intimately familiar with Aston Martin's automobiles, designs, and intellectual property, including the rights asserted by Aston Martin in this action.

37.   In 2007, Fisker co-founded Fisker Automotive, Inc. ("Fisker Automotive") to design, assemble and manufacture electric cars in the U.S. Fisker Automotive filed for bankruptcy on November 22, 2013.  In early 2014, the assets of Fisker Automotive were purchased out of bankruptcy by Wanxiang Group.

38.   On November 6, 2014, Fisker approached Aston Martin management about collaborating on a proposal named "Project Thunderbolt."  As originally pitched to Aston Martin by Fisker, Project Thunderbolt consisted of, among other things, Fisker using one of Aston Martin's VANQUISH cars as the platform for designing a car that retained a number of Aston Martin design features and Aston Martin trademarks.

39.   Fisker disclosed his plans for Project Thunderbolt for the first time to Aston Martin management approximately two weeks before the annual Los Angeles Auto Show ("LA Auto Show"), one of the most influential and well-attended auto shows in the world.  Fisker also informed Aston Martin that he intended to announce and display his Thunderbolt prototype car at the LA Auto Show.  On November 10, 2014, Aston Martin advised Fisker in writing that it would not participate in Project Thunderbolt as

proposed, that Fisker did not have Aston Martin's permission to display the Thunderbolt prototype publicly, including at the LA Auto Show and to the media, and that doing so would violate Aston Martin's intellectual property rights.

40.     Fisker advised Aston Martin on November 14, 2014 that the Thunderbolt prototype would not be displayed at the LA Auto Show or to the press at that time, and Fisker did not display or otherwise publicize the Thunderbolt prototype car at the LA Auto Show.   After the LA Auto Show, the parties' counsel exchanged additional correspondence relating to the Thunderbolt prototype.

41.     Based on Fisker's and his counsel's representations during discussions with Aston Martin and in correspondence, Aston Martin understood that Fisker was moving in a different direction, would not use any Aston Martin badge (the lettering or insignia designating the make or model of a car) or name anywhere on or around the Thunderbolt prototype, would not commercialize the Thunderbolt prototype with any Aston Martin intellectual property, and would not use any designs similar to Aston Martin's Grille Mark and Side Vent Mark.

///
///
///
///
///
///
///
///
///
///
///
///
///

**B.**     **Fisker's and Galpin's Unauthorized Display and Promotion of the Thunderbolt Car at the Amelia Island Auto Show and in the Media**

42.     On March 14, 2015, without notice from Fisker and without Aston Martin's permission or knowledge, Fisker unveiled a Thunderbolt prototype car at the Amelia Island Councours D'Elegance in Florida, a popular automotive show and competition held annually at the Ritz-Carlton Amelia Island.   Photographs of the Thunderbolt prototype car as displayed at the event ("Thunderbolt Prototype") are shown below.







43.     The Aston Martin badges featuring its famous Wings Logo either had been left on the Thunderbolt Prototype or very similar badges had been substituted in their place.  Either way, as shown in the close-up photos below, the iconic Wings Logo or a confusingly similar variation thereof was still prominently displayed on the front and back badges of the Thunderbolt Prototype.







**Aston Martin's Wings Logo**          **Thunderbolt Prototype Front and Back Badges**

44.     Additionally, contrary to Fisker's prior representations to Aston Martin, the Thunderbolt Prototype still featured a confusingly similar variation of Aston Martin's

Grille Mark as shown below.

 

 

**Thunderbolt Prototype Grille**          **Aston Martin Grille Mark**

45. Further, contrary to Fisker's representations to Aston Martin, the Thunderbolt Prototype still featured a confusingly similar variation of Aston Martin's Side Vent Mark as shown below.



46.     Additionally, as shown below and as part of Fisker's scheme to trade on Aston Martin's goodwill, the Thunderbolt Prototype featured a strake design extending from the Side Vent Mark that is strikingly similar to those used on existing Aston Martin vehicles.



47.     In parallel with the unveiling of the Thunderbolt Prototype at the Amelia Island show, Fisker launched a widespread advertising and promotional campaign.  In the week that has passed since the show, Fisker and the Thunderbolt Prototype have already received substantial and extensive media attention and nationwide publicity. Articles and commentary featuring the Thunderbolt Prototype have appeared on numerous websites, including popular websites visited by auto enthusiasts such as www.motorauthority.com, www.BBC.com, www.topgear.com, www.designboom.com, www.BusinessInsider.com, www.dupontregistry.com, and www.roadandtrack.com, and the Thunderbolt Prototype already has been viewed *thousands* of times on popular social media sites, including Twitter, Facebook, Instagram, Tumblr, and Flickr.

48.     Fisker has participated in interviews relating to the Thunderbolt Prototype, which also have been widely reported by the press.  In these interviews, Fisker has stated that although the Thunderbolt Prototype is a design concept, a version of the Thunderbolt

1   car will be available for consumers to purchase as a production car.

2       49.    According to various media reports, Defendants intend to offer for sale the

3   Thunderbolt production car displayed below ("Thunderbolt Production Car")

4   exclusively through an authorized Aston Martin dealer.  Thus, contrary to Fisker's prior

5   representations to Aston Martin that the ASTON MARTIN name would not appear

6   anywhere around the Thunderbolt Prototype, the ASTON MARTIN name appears

7   *everywhere* in connection with the Thunderbolt Prototype as a result of Fisker's own

8   statements and his prominent use of an Aston Martin dealer to promote the Thunderbolt

9   Prototype.



21      50.    The Thunderbolt Production Car copies numerous design features of Aston

22  Martin's genuine automobiles.  Below are photographs of the Aston Martin Rapide S

23  automobile and Fisker's Thunderbolt Production Car, which comparison shows the

24  striking similarities between the cars.

25  ///

26  ///

27  ///

28  ///

1
2
3
4
5
6
7
8



**Aston Martin Rapide S**



**Thunderbolt Production Car**

9
10
11
12
13
14

15    51.    The Thunderbolt Production Car features a confusingly similar variation of
16  Aston Martin's Grille Mark.  As shown below, the Thunderbolt Production Car features
17  a grille design having an outline extending to form Aston Martin's proprietary "S" curve
18  Grille Mark.
19
20
21
22
23
24
25
26
27
28



52.    The Thunderbolt Production Car also features a confusingly similar variation of Aston Martin's Side Vent Mark as shown below.




**Aston Martin Side Vent**                    **Thunderbolt Production Car Side Vent**

53.    In addition to misappropriating Aston Martin's intellectual property, Fisker also has repeatedly made false and misleading statements to the media and consumers in commercial advertising, including that the Thunderbolt Prototype is based on an Aston Martin VANQUISH automobile.  The Thunderbolt Prototype that Fisker has extensively promoted to the public is not based on an Aston Martin VANQUISH automobile (which is Aston Martin's newest-generation and most expensive mainstream production automobile model).  Rather, the Thunderbolt Prototype appears to be made using Aston Martin's earlier-generation DB9 (or DBS) automobiles as the "donor" cars. Fisker's false statements are intended to deceive consumers into mistakenly believing the Thunderbolt Prototype features the qualities and characteristics of the newer, higher-end Aston Martin VANQUISH model.

54.    Additionally, Fisker's extensive advertising and promotion of the Thunderbolt Prototype, featuring minor variations of Aston Martin's iconic trademarks, with the intent to later sell a different production version of the Thunderbolt constitutes a classic "bait and switch" scheme.  Fisker's bad-faith intent to free-ride off the tremendous goodwill associated with the famous ASTON MARTIN Mark, Wings Logo, Side Vent Mark, and VANQUISH Mark could not be more transparent.  There is simply

no other reason why Fisker would use Aston Martin's proprietary design elements in the Thunderbolt Prototype to sell a production car that will allegedly have none of those same iconic proprietary designs.

### C.   Galpin Aston Martin's Violation of Its Dealer Agreement with Aston Martin

55.   For many years, Galpin Jaguar Lincoln-Mercury, Inc. ("Galpin Aston Martin") has owned and operated an Aston Martin dealership under the name Galpin Aston Martin.

56.   In 2003, Galpin Aston Martin and AMLNA entered into a "Retail Dealer Sales and Service Agreement" ("Agreement"), which incorporated the "Aston Martin Lagonda of North America, Inc. Retail Dealer Sales and Service Agreement" (the "Standard Provisions").  The Agreement is currently in effect.

57.   The Standard Provisions of the Agreement provide definitions for the following terms, among others:

"Aston Martin Products" means "Aston Martin Vehicles" or "Genuine Aston Martin Parts;"

"Aston Martin Vehicles" means "any new automobile manufactured by Aston Martin Lagonda Limited and bearing any of the trademarks of Aston Martin Lagonda Limited and sold and distributed by Aston Martin;"

"Genuine Aston Martin Parts" means "all parts, accessories or equipment for Aston Martin Vehicles manufactured, sold and/or licensed by Aston Martin Lagonda Limited or Aston Martin and supplied to Dealer by Aston Martin or by a third-party designated in writing by either Aston Martin or Aston Martin Lagonda Limited;" and

"Aston Martin Trademarks" means "the words 'Aston Martin' or 'Lagonda,' the

Aston Martin 'Wings Device' Trademark and any other trademark, service mark, trade name or trade dress now or at any time hereafter used or claimed by Aston Martin Lagonda Limited or Aston Martin."

58.    Pursuant to Section 11.1 of the Standard Provisions, Galpin Aston Martin agreed to use the Aston Martin Trademarks (which, by definition, include the ASTON MARTIN Mark, Wings Logo, Grille Mark, Side Vent Mark, and VANQUISH Mark) "only in connection with the promotion and sale of Aston Martin Products. . . . " Neither the Thunderbolt Prototype nor the Thunderbolt Production Car are "Aston Martin Products."

59.    Pursuant to Section 11.2 of the Standard Provisions, Galpin Aston Martin:

- [s]hall not remove or alter any Aston Martin Trademark affixed to any Aston Martin Product by Aston Martin or by a third-party authorized by Aston Martin to do so, or one of its corporate affiliates; and

- [s]hall not use, display, advertise or sell any product which incorporates or utilizes an Aston Martin trademark unless such product is manufactured or licensed by Aston Martin or one of its corporate affiliates."

As detailed below, the ASTON MARTIN Mark, Wings Logo, and Grille Mark have been removed or altered on the Thunderbolt Prototype shown in promotional materials displayed and promoted by Galpin Aston Martin. Fisker allegedly intends to remove or alter the ASTON MARTIN Mark, Wings Logo, and Grille Mark from the Thunderbolt Production Car that will be distributed by Galpin Aston Martin. Neither the Thunderbolt Prototype nor the Thunderbolt Production Car were manufactured or licensed by Aston Martin.

60.    Further, pursuant to Section 11.2 of the Standard Provisions of the Agreement, Galpin Aston Martin agreed to take such steps as Aston Martin may request to protect the Aston Martin Trademarks and cooperate with Aston Martin in preventing

1 any acts of trademark infringement or unfair competition with respect to any Aston
2 Martin Trademarks.

3      61.   Pursuant to Section 11.3 of the Standard Provisions, Galpin Aston Martin
4 agreed that the "Aston Martin Trademarks possess a special, unique and extraordinary
5 character that makes difficult the assessment of the monetary damage that would be
6 sustained by Aston Martin in the event of any unauthorized use."  Further, Galpin agreed
7 that "irreparable injury would be caused by unauthorized use" and that Aston Martin
8 "reserves all rights to seek preliminary and permanent injunctive relief to prevent such
9 unauthorized use."

10      62.   Pursuant to Section 12.1 of the Standard Provisions, Galpin Aston Martin
11 agreed to "conduct all its advertising and merchandising efforts in a truthful and ethical
12 manner and consistent with the reputation and image of Aston Martin Products."
13 Further, Galpin Aston Martin acknowledged that failure to do so constitutes a material
14 breach of the Agreement.  Galpin Aston Martin also agreed that it will discontinue any
15 advertising and cease to use or sell any promotional materials or accessories to which
16 Aston Martin objects, and that "Aston Martin specifically reserves the right to require
17 [Galpin Aston Martin] to cease any advertising inconsistent with this provision including
18 the right to prohibit [Galpin Aston Martin] from using Aston Martin Trademarks in
19 advertising."  As detailed below, Galpin Aston Martin's advertising and promotion of
20 the Thunderbolt Prototype and Thunderbolt Production Car has not been truthful or
21 consistent with the reputation and image of Aston Martin's products.

22 ///
23 ///
24 ///
25 ///
26 ///
27 ///
28 ///

1

2

**D.     Galpin's Unauthorized Display and Promotion of the Thunderbolt Prototype and Thunderbolt Production Car**

3       63.     Without Aston Martin's permission or knowledge, on or around March 14,

4    2015, Galpin began promoting the Thunderbolt Prototype on its Galpin Aston Martin

5    dealer website at www.galpinastonmartin.com, on Galpin Motors' website at

6    www.galpin.com, on GAS's website at www.galpinautosports.com, and at the "Galpin

7    Premier Collection" at www.galpinpremier.com.  A representative screen capture from

8    these websites is shown below.  The Thunderbolt Prototype is displayed in a more

9    prominent and dominant position than the Aston Martin automobiles sold by Galpin as

10   part of its Aston Martin dealership.  Not only is the Thunderbolt Prototype by far the

11   largest vehicle on the website home page, the Aston Martin automobiles appear below

12   and are subordinate to the Thunderbolt Prototype.



25      64.     As shown above, the wording "IT'S UNVEILED! 2015 THUNDERBOLT"

26   and a large photo of the Thunderbolt Prototype are prominently displayed directly under

27   the GALPIN ASTON MARTIN name and Wings Logo and above Fisker's HF logo

28   (defendant HF Design owns a federal trademark application for the HF logo), the Wings

1   Logo, and Galpin's GAS logo and photographs of five of Aston Martin's actual

2   production cars, including Aston Martin's Vanquish automobile.   The Thunderbolt

3   Production Car does not appear anywhere on the web page.

4       65.   Fisker's Thunderbolt Prototype was and is also promoted on the Galpin

5   Motors website, located at www.galpin.com, as shown below.   The Thunderbolt

6   Prototype is prominently displayed near the top of the home page, and highlights the

7   well-known Aston Martin Grille Mark along side the Aston Martin mark and Wings

8   Logo.



9

10

11

12

13

14

15

16

17

18       66.   When users click on this prominent display of the Thunderbolt Prototype on

19   the Galpin Motors website, they are taken to Galpin Aston Martin's website,

20   www.galpinastonmartin.com, where the feature article, which appears directly below the

21   prominent Wings Logo and Galpin Aston Martin dealership name, describes the

22   Thunderbolt Prototype (shown below).   The article describes Fisker and the Amelia

23   Island automobile show.   To the immediate right of the photograph of the Thunderbolt

24   and Fisker is a link that states: "READ MORE ASTON MARTIN NEWS," which

25   further reinforces the impression created by the website that Aston Martin is the source

26   of or has approved, sponsored, or is otherwise affiliated with the Thunderbolt Prototype.

27   ///

28   ///



67.   Without Aston Martin's permission or knowledge, Galpin also issued and posted on its Galpin Aston Martin website at www.galpinastonmartin.com a press release in connection with the "unveiling" of the Thunderbolt Prototype, which indicated that the Thunderbolt Production Car would be available exclusively through Galpin Aston Martin and that consumers should contact GAS for more information on the Thunderbolt and to discuss commissioning a built-to-order "version" of the car.

68.   Without Aston Martin's permission or knowledge, Galpin also promoted the Thunderbolt Prototype through social media sites such as Instagram, as shown in the photograph posted by GAS below, displaying that car and Henrik Fisker with his arm around a Galpin representative, Beau Boeckmann, an owner and officer of Galpin Motors and GAS.  Directly under the Thunderbolt Prototype, Galpin has displayed the hashtags #GetItatGalpin, #Henrik Fisker, and #GalpinAstonMartin, among others. Additionally, Galpin has publicized the Thunderbolt Prototype as the cover photo on its Facebook page and through a series of Tweets on its Twitter page, starting with the event at Amelia Island.

///

///

1
2
3
4
5
6
7
8
9
10
11
12
13
14



15    69.    Galpin's actions described above, including its collaboration with Fisker and

16  its unauthorized use of the Aston Martin Trademarks (as defined in the Agreement) in

17  connection with the display and promotion of the Thunderbolt Production Car breach at

18  least Sections 11.1, 11.2, 11.3, and 12.1 of the Standard Provisions of the Agreement

19  between AMLNA and GAS.

20    70.    Further, such unauthorized uses of the Aston Martin Trademarks by Galpin

21  have irreparably harmed, and if not enjoined, will continue to irreparably harm Aston

22  Martin and the general public.

23    71.    By promoting the Thunderbolt Prototype through one of Aston Martin's

24  largest dealers (Galpin), on that dealer's websites (websites that promote genuine

25  production Aston Martin automobiles and prominently display the ASTON MARTIN

26  Mark, Wings Logo, and Aston Martin's other well-known automobile brands, including

27  VANQUISH), through press releases issued by an Aston Martin dealer, and by offering

28  the Thunderbolt Production Car for sale exclusively through an Aston Martin dealer,

Galpin and Fisker have made false and misleading statements that suggest that the Thunderbolt Prototype is an authorized Aston Martin automobile, and they have used Aston Martin's trademarks and other intellectual property in a manner than is likely deceive and confuse consumers and dilute the famous ASTON MARTIN Mark.

72.    At all relevant times, Fisker knew that Galpin Aston Martin was an Aston Martin dealer and that it was not permitted to make unauthorized use of Aston Martin's trademarks pursuant to its license agreement with Aston Martin, but Fisker nevertheless engaged in the unlawful activities described above.

**E.    Defendants' Unlawful Activities Have Caused Actual Confusion and Consumers to Mistakenly Believe the Thunderbolt Prototype is an Aston Martin Car and/or Based on an Aston Martin VANQUISH Car**

73.    Although the Thunderbolt Prototype and Thunderbolt Production Car have only been displayed and promoted publicly for a week, members of the media and consumers have already been confused and deceived into believing that those products are made by, sponsored by, connected to, licensed by, or otherwise associated with Aston Martin.   Below is a chart of representative comments and questions reflecting such confusion and deception.

///

///

///

///

///

///

///

///

///

///

| Date | Website/ Author/ Title | Relevant Excerpts |
|------|------------------------|-------------------|
| **Mar. 18, 2015** | www.twitter.com<br><br>Oliver Sellors<br><br>I officially have a new favourite car! |  |
| **Mar. 18, 2015** | www.twitter.com<br><br>Motormindz<br><br>Thanks Astonmartin for the thunderbolt | |

| | | |
|---|---|---|
| **Mar. 18, 2015** | www.twitter.com<br><br>Escort Radar<br><br>The Aston Martin #Thunderbolt is what dreams are made of |  |
| **Mar. 18, 2015** | www.twitter.com<br><br>Chris<br><br>Aston Martin Thunderbolt | |
| **Undated** | www.tumblr.com<br><br>Fuckyeaconceptcarz<br><br>2015 Aston Martin Thunderbolt (Galpin) | |

| Undated | www.tumblr.com Kahzu 2015 Aston Martin Thunderbolt by Galpin |  |
| Mar. 16, 2015 | http://www.businessinsider.com Benjamin Zhang, This is the $700,000 Aston Martin we've all been waiting for | This is the $700,000 Aston Martin we've all been waiting for<br>This is the most intense Aston Martin of all time …<br>DON'T MISS: The $2.3 million Aston Martin Vulcan hypercar is way more insane than we imagined  |
| Mar. 14, 2015 | https://instagram.com/ Tshenphotography What are your thoughts on the new Fisker-Galpin Thunderbolt? \| #ameliaisland |  |
| Undated | http://www.motorward.com/ Rendering: Aston Martin Thunderbolt Volante | Rendering: Aston Martin Thunderbolt Volante |

- 34 -

74.     Additionally, Fisker and Galpin's false statements that the Thunderbolt Prototype is based on an Aston Martin VANQUISH automobile, when it is not, have had the desired effect.  Below is a chart of representative comments and questions reflecting the media's and consumers' mistaken belief that the Thunderbolt Prototype is based on an Aston Martin VANQUISH automobile.

| Date | Website/ Author/ Title | Relevant Excerpts |
|------|------------------------|-------------------|
| **Mar. 14, 2015** | http://www.autocar.co.uk/car-news/<br><br>Darren Moss<br><br>Henrik Fisker unveils Aston Martin Vanquish-based Thunderbolt |  |

| | | |
|---|---|---|
| **Mar 14, 2015** | http://blog.caranddriver.com/<br><br>JoeLorio<br><br>Behold the Thunderbolt, an Aston Martin Vanquish Customized by Henrik Fisker |  |
| **Mar 16, 2015** | http://www.topgear.com<br><br>Vijay Pattni<br><br>Meet the Fisker Thunderbolt | <br> |

| Mar. 17, 2015 | http://www.businessinsider.com

NoNo

This is the $700,000 Aston Martin we've all been waiting for |  |
| Mar. 17, 2015 | www.twitter.com

TopGear

Meet the Fisker Thunerbolt, a one-off Aston Martin V12 Vanquish with added phwoarrrr |  |

## HARM TO ASTON MARTIN AND THE PUBLIC

75.   Defendants' unauthorized use and promotion of the Thunderbolt Prototype and Thunderbolt Production Car in connection with the ASTON MARTIN Mark,

VANQUISH Mark, Wings Logo, Grille Mark, and Side Vent Mark, is likely to cause confusion, mistake, and deception as to the source or origin of those unauthorized products, and is likely to falsely suggest a sponsorship, connection, license, or association of Defendants and their Thunderbolt Prototype and Thunderbolt Production Car, with Aston Martin. In fact, Defendants' actions have already caused actual confusion between Defendants' products and Aston Martin and its products.

76. Defendants' activities have irreparably harmed, and if not enjoined, will continue to irreparably harm the general public, which has an inherent interest in being free from confusion, mistake, and deception.

77. Defendants' activities have irreparably harmed and, if not enjoined, will continue to irreparably harm Aston Martin and its ASTON MARTIN Mark, Wings Logo, VANQUISH Mark, Grille Mark, and Side Vent Mark.

78. Defendants actions described above are likely to dilute and, if not enjoined, will continue to dilute the distinctiveness and value of and tarnish Aston Martin's famous ASTON MARTIN Mark.

79. Defendants' false and/or misleading statements, individually and collectively, are material and irreparably injure the public and Aston Martin by deceiving consumers into mistakenly believing that the Thunderbolt Prototype and Thunderbolt Production Car have qualities and characteristics that they do not, including without limitation that those cars are based on Aston Martin's VANQUISH car and/or that those cars are offered by, authorized, sponsored, connected with, licensed by, or associated with Aston Martin.

80. Defendants' false and/or misleading statements, individually and collectively, have caused, and if not enjoined, will continue to cause actual and irreparable harm to Aston Martin and the public.

81. Galpin's unauthorized use and promotion of the ASTON MARTIN Mark, VANQUISH Mark, Wings Logo, Grille Mark, and Side Vent Mark, and if not enjoined, will continue to cause actual and irreparable harm to Aston Martin and the public.

82.     Defendants knew or should have known that their activities described above were infringing and dilutive, and that their advertising claims were false and/or misleading, and thus Defendants acted knowingly, willfully, in reckless regard of the truth, and in bad faith.

**FIRST CLAIM FOR RELIEF**

**Trademark Infringement Under**

**<u>Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1)</u>**

83.     Aston Martin repeats and realleges each and every allegation set forth in Paragraphs 1 through 82 of this Complaint.

84.     Without Aston Martin's consent, Fisker used and continues to use in commerce reproductions, copies, and colorable imitations of Aston Martin's registered ASTON MARTIN Mark, VANQUISH Mark, Wings Logo, Grille Mark, and Side Vent Mark in connection with the offering, distribution, and/or advertising of goods and services, which is likely to cause confusion, or to cause mistake, or to deceive, in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

85.     Without Aston Martin's consent, Galpin used and continues to use in commerce reproductions, copies, and colorable imitations of Aston Martin's registered ASTON MARTIN Mark, VANQUISH Mark, Wings Logo, Grille Mark, and Side Vent Mark in connection with the offering, distribution, and/or advertising of goods and services, which is likely to cause confusion, or to cause mistake, or to deceive, in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

86.     Defendants' activities described above have at all times been willful and/or knowing.

87.     As a direct and proximate result of actions of Defendants described above, Aston Martin has been damaged and will continue to be damaged.

///

///

///

## SECOND CLAIM FOR RELIEF

### Trademark Infringement, False Designation
### of Origin, Passing Off, and Unfair Competition
### <u>Under Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A)</u>

88.     Aston Martin repeats and realleges each and every allegation set forth in Paragraphs 1 through 87 of this Complaint.

89.     Fisker's actions, as described above, including without limitation his use and promotion of the Thunderbolt Prototype and Thunderbolt Production Car and confusingly similar variations of Aston Martin's ASTON MARTIN Mark, VANQUISH Mark, Wings Logo, Grille Mark, and Side Vent Mark, are likely to cause confusion, or to cause mistake, or to deceive as to the origin, sponsorship, or approval of Fisker, his products, and/or his commercial activities by or with Aston Martin, and thus constitute trademark infringement, false designation of origin, passing off, and unfair competition in violation of Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

90.     Galpin's actions, as described above, including without limitation its use and promotion of the Thunderbolt Prototype and Thunderbolt Production Car and confusingly similar variations of Aston Martin's ASTON MARTIN Mark, VANQUISH Mark, Wings Logo, Grille Mark, and Side Vent Mark, are likely to cause confusion, or to cause mistake, or to deceive as to the origin, sponsorship, or approval of Galpin, its products, and/or its commercial activities by or with Aston Martin, and thus constitute trademark infringement, false designation of origin, passing off, and unfair competition in violation of Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

91.     Defendants' activities described above have at all times been willful and/or knowing.

92.     As a direct and proximate result of actions of Defendants described above, Aston Martin has been damaged and will continue to be damaged.

///

///

## THIRD CLAIM FOR RELIEF

### False Advertising in Violation of Federal Law

### Under Section 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B)

93.   Aston Martin repeats and realleges each and every allegation set forth in Paragraphs 1 through 92 of this Complaint.

94.   Fisker's actions, as described above, constitute false and misleading descriptions and misrepresentations of fact in commerce which, in commercial advertising and promotion, misrepresent the nature, characteristics, and qualities of Fisker and Galpin's products and/or Aston Martin's products in violation of Section 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B).

95.   Galpin's actions, as described above, constitute false and misleading descriptions and misrepresentations of fact in commerce which, in commercial advertising and promotion, misrepresent the nature, characteristics, and qualities of Galpin and Fisker's products and/or Aston Martin's products in violation of Section 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B).

96.   Defendants' activities described above have at all times been willful and/or knowing.

97.   As a direct and proximate result of actions of Defendants described above, Aston Martin has been damaged and will continue to be damaged.

## FOURTH CLAIM FOR RELIEF

### Trademark Dilution Under Section

### 43(c) of the Lanham Act, 15 U.S.C. § 1125(c)

98.   Aston Martin repeats and realleges each and every allegation set forth in Paragraphs 1 through 97 of this Complaint.

99.   Aston Martin's ASTON MARTIN Mark is famous, as that term is used in 15 U.S.C. § 1125(c), and was famous before Fisker and Galpin first used or promoted the Thunderbolt Prototype or Thunderbolt Production Car, based on, among other things, the inherent distinctiveness and federal registration of Aston Martin's ASTON MARTIN

Mark and the extensive nationwide use, advertising, promotion, and recognition of that mark.

100.   Aston Martin's ASTON MARTIN Mark is famous, as that term is used in 15 U.S.C. § 1125(c), and was famous before Fisker and Galpin first used or promoted the Thunderbolt Prototype, based on, among other things, the inherent distinctiveness and federal registration of Aston Martin's ASTON MARTIN Mark and the extensive nationwide use, advertising, promotion, and recognition of that mark.

101.   Fisker's actions, as described above, are likely to dilute the distinctive quality of and tarnish Aston Martin's famous and well-known ASTON MARTIN Mark in violation of Section 43(c) of the Lanham Act, 15 U.S.C. §1125(c), as amended by the Trademark Dilution Revision Act of 2006.

102.   Galpin's actions, as described above, are likely to dilute the distinctive quality of Aston Martin's famous and well-known ASTON MARTIN Mark in violation of Section 43(c) of the Lanham Act, 15 U.S.C. §1125(c), as amended by the Trademark Dilution Revision Act of 2006.

103.   Defendants' activities described above have at all times been willful and/or knowing.

104.   As a direct and proximate result of actions of Defendants described above, Aston Martin has been damaged and will continue to be damaged.

## FIFTH CLAIM FOR RELIEF

### Trademark Dilution Under California Business & Professions Code § 14247

105.   Aston Martin realleges and incorporates by reference each of the allegations contained in Paragraphs 1 through 104 of this Complaint as though fully set forth herein.

106.   The ASTON MARTIN Mark is famous in California, and was famous in California before Fisker's use and promotion of the Thunderbolt Prototype or Thunderbolt Production Car in commerce, based on, among other things, the inherent distinctiveness and federal registration of the ASTON MARTIN Mark and the extensive nationwide use, promotion, and recognition of ASTON MARTIN Mark, including in

California.

107.  The ASTON MARTIN Mark is famous in California, and was famous in California before Galpin's use and promotion of the Thunderbolt Prototype or Thunderbolt Production Car in commerce, based on, among other things, the inherent distinctiveness and federal registration of ASTON MARTIN Mark and the extensive nationwide use, promotion, and recognition of the ASTON MARTIN Mark, including in California.

108.  Fisker's use and promotion of the Thunderbolt Prototype and Thunderbolt Production Car is likely to cause dilution by blurring and dilution by tarnishment of the ASTON MARTIN Mark.

109.  Galpin's use and promotion of the Thunderbolt Prototype and Thunderbolt Production Car is likely to cause dilution by blurring and dilution by tarnishment of the ASTON MARTIN Mark.

110.  The above-described acts of Defendants constitute trademark dilution in violation of California Business & Professions Code § 14247.

111.  Defendants' activities described above have at all times been willful and/or knowing.

112.  As a direct and proximate result of actions of Defendants described above, Aston Martin has been damaged and will continue to be damaged.

## SIXTH CAUSE OF ACTION

### Unfair Competition With Plaintiff Under California Business & Professions Code §§ 17200, 17500 et seq.

113.  Aston Martin realleges and incorporates by reference each of the allegations contained in Paragraphs 1 through 112 of this Complaint as though fully set forth herein.

114.  As described above, Fisker has infringed Aston Martin's ASTON MARTIN Mark, Wings Logo, VANQUISH Mark, Grille Mark, and Side Vent Mark in violation of Aston Martin's proprietary rights, and has engaged in unfair, deceptive, untrue, and/or misleading advertising.  Such acts constitute unfair trade practices, false advertising, and

unfair competition under California Business & Professions Code §§ 17200, 17500 *et seq.*

115.   As described above, Galpin has infringed Aston Martin's ASTON MARTIN Mark, Wings Logo, VANQUISH Mark, Grille Mark, and Side Vent Mark in violation of Aston Martin's proprietary rights, and has engaged in unfair, deceptive, untrue and/or misleading advertising.  Such acts constitute unfair trade practices, false advertising, and unfair competition under California Business & Professions Code §§ 17200, 17500 *et seq.* Defendants' activities described above have at all times been willful and/or knowing.

116.   As a direct and proximate result of actions of Defendants described above, Aston Martin has been damaged and will continue to be damaged.

**SEVENTH CAUSE OF ACTION**

**<u>Common Law Trademark Infringement, Unfair Competition,</u>**

**<u>Misappropriation</u>**

117.   Plaintiff realleges and incorporates by reference each of the allegations contained in Paragraphs 1 through 116 of this Complaint as though fully set forth here.

118.   Fisker has infringed Aston Martin's ASTON MARTIN Mark, Wings Logo, VANQUISH Mark, Grille Mark, and Side Vent Mark in violation of Aston Martin's proprietary rights and has engaged in false and misleading advertising.  Such acts constitute unfair trade practices and unfair competition under the common law.

119.   Galpin has infringed Aston Martin's ASTON MARTIN Mark, Wings Logo, VANQUISH Mark, Grille Mark, and Side Vent Mark in violation of Aston Martin's proprietary rights and has engaged in false and misleading advertising.  Such acts constitute unfair trade practices and unfair competition under the common law.

120.   Defendants' activities described above have at all times been willful and/or knowing.

121.   As a direct and proximate result of actions of Defendants described above, Aston Martin has been damaged and will continue to be damaged.

# EIGHTH CAUSE OF ACTION

## Intentional Interference with Contractual Relationships

122.   Plaintiff realleges and incorporates by reference each of the allegations contained in Paragraphs 1 through 121 of this Complaint as though fully set forth here.

123.   The Agreement between AMLNA and Galpin Aston Martin is valid.

124.   At all relevant, times Fisker was aware that Galpin Aston Martin was an authorized Aston Martin dealer and of the Agreement.  Fisker was also aware that any promotion or use of the Thunderbolt Prototype was unauthorized based on Aston Martin's repeated objections to Fisker's use and promotion of Thunderbolt designs that misappropriated Aston Martin's trademarks.

125.   Fisker's actions described above, were intended to induce a breach or disruption of Galpin Aston Martin's contractual relationship with Aston Martin.

126.   Fisker's actions above did, in fact, induce an actual breach or disruption of Galpin Aston Martin's contractual relationship with Aston Martin, causing damage to Aston Martin and its intellectual property.

127.   Fisker's activities described above have at all times been willful and/or knowing.

128.   As a direct and proximate result of actions of Fisker described above, Aston Martin has been damaged and will continue to be damaged.

# NINTH CAUSE OF ACTION

## Interference with Prospective Economic Advantage

129.   Plaintiff realleges and incorporates by reference each of the allegations contained in Paragraphs 1 through 128 of this Complaint as though fully set forth here.

130.   At all relevant times, an economic relationship existed between Aston Martin and Galpin Aston Martin containing probable future economic benefit or advantage to Aston Martin.

131.   At all relevant times, Fisker knew of the economic relationship between Aston Martin and Galpin Aston Martin.

132.   As described in detail above, Fisker intentionally engaged in wrongful acts or conduct designed to interfere with or disrupt the economic relationship between Aston Martin and Galpin Aston Martin.

133.   Fisker actually interfered with or disrupted the economic relationship between Aston Martin and Galpin, causing damages to Aston Martin.

134.   Fisker's activities described above have at all times been willful and/or knowing.

135.   As a direct and proximate result of actions of Fisker described above, Aston Martin has been damaged and will continue to be damaged.

## **JURY DEMAND**

Pursuant to Fed. R. Civ. P. 38, Aston Martin respectfully demands a trial by jury on all issues properly triable by a jury in this action.

## **PRAYER FOR RELIEF**

WHEREFORE, Aston Martin prays that this Court enter judgment in its favor on each and every claim for relief set forth above and award it relief including, but not limited to, the following:

A.   A preliminary and permanent injunction enjoining Fisker and his employees, agents, partners, officers, directors, owners, shareholders, principals, subsidiaries, related companies, affiliates, distributors, dealers, retailers, and all persons in active concert or participation with any of them:

1.   From using the ASTON MARTIN Mark, Wings Logo, Grille Mark, Side Vent Mark, VANQUISH Mark, any other trademarks owned by Aston Martin, and any marks, names, trade dress, and designs that are confusingly similar to or likely to dilute any such marks, in any unauthorized manner, including without limitation on, and on any materials displaying, the Thunderbolt Prototype and Thunderbolt Production Car;

2.   From representing by any means whatsoever, directly or indirectly,

that Fisker, any products or services offered by Fisker, or any activities undertaken by Fisker, are authorized, licensed, or otherwise approved, endorsed, or affiliated with Aston Martin;

3.    From making the false and misleading statements detailed above and from otherwise mischaracterizing the source nature, characteristics, and qualities of Fisker's, Galpin's, and/or Aston Martin's products or commercial activities;

4.    From otherwise publishing, printing, or disseminating false, misleading, or deceptive statements regarding Aston Martin, Aston Martin's products, or Aston Martin's business activities or Fisker's, Fisker's products, or Fisker's business activities; and

5.    From assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to in subparagraphs A.1-4 above.

B.    A preliminary and permanent injunction enjoining Galpin Motors, GAS and their employees, agents, partners, officers, directors, owners, shareholders, principals, subsidiaries, related companies, affiliates, distributors, dealers, retailers, and all persons in active concert or participation with any of them:

1.    From using the ASTON MARTIN Mark, Wings Logo, Grille Mark, Side Vent Mark, VANQUISH Mark, any other trademarks owned by Aston Martin, and any marks, names, trade dress, and designs that are confusingly similar to or likely to dilute any such marks, including but not limited to on, or on materials displaying, the Thunderbolt Prototype and Thunderbolt Production Car;

2.    From representing by any means whatsoever, directly or indirectly, that Galpin Aston Martin, Galpin Motors, and GAS, any products or services offered by them, or any activities undertaken by them, are authorized, licensed, or otherwise approved, endorsed, or

affiliated with Aston Martin;

3.    From making the false and misleading statements detailed above and from otherwise mischaracterizing the nature, characteristics, and qualities of Fisker's, Galpin's, and/or Aston Martin's products or commercial activities;

4.    From otherwise publishing, printing, or disseminating false, misleading, or deceptive statements regarding Aston Martin, Aston Martin's products, or Aston Martin's business activities or Fisker, Fisker's products, or Fisker's business activities; and

5.    From assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to in subparagraph B. 1-4 above.

C.    An Order directing Fisker to destroy all products and materials that consist of, bear, or display the Thunderbolt Prototype and Thunderbolt Production Car or any other unauthorized uses of the ASTON MARTIN Mark, Wings Logo, Grille Mark, Side Vent Mark, VANQUISH Mark, any other trademarks owned by Aston Martin, or any marks, names, trade dress, and designs that are confusingly similar to or likely to dilute or tarnish any such marks, in accordance with 15 U.S.C. § 1118 and other applicable laws;

D.    An Order directing Galpin Motors and GAS to destroy all products and materials that consist of, bear, or display the Thunderbolt Prototype and Thunderbolt Production Car or any other unauthorized uses of the ASTON MARTIN Mark, Wings Logo, Grille Mark, Side Vent Mark, VANQUISH Mark, any other trademarks owned by Aston Martin, or any marks, names, trade dress, and designs that are confusingly similar to or likely to dilute or tarnish any such marks, in accordance with 15 U.S.C. § 1118 and other applicable laws;

E.    An Order directing Fisker to retract and destroy all advertisements, commercials, and other materials containing:  (1) any of the false or misleading

statements complained of herein; and (2) any false, misleading, or deceptive statements regarding Aston Martin, Aston Martin's products, or Aston Martin's business activities or Fisker, Fisker's products, Fisker's business activities; or Galpin, Galpin's products, Galpin's business activities;

F.    An Order directing Galpin Motors and GAS to retract and destroy all advertisements, commercials, and other materials containing:  (1) any of the false or misleading statements complained of herein; and (2) any false, misleading, or deceptive statements regarding Aston Martin, Aston Martin's products, or Aston Martin's business activities or Fisker, Fisker's products, Fisker's business activities; or Galpin, Galpin's products, Galpin's business activities;

G.    An Order requiring Fisker to pay Aston Martin the cost for corrective advertising and/or to engage in corrective advertising in a manner directed by the Court;

H.    An Order directing Defendants to file with this Court and serve on Aston Martin's attorneys, thirty (30) days after the date of entry of any injunction, a report in writing and under oath setting forth in detail the manner and form in which it has complied with the injunction;

I.    An Order requiring Fisker to account for and to pay any and all profits arising from the foregoing acts of infringement, dilution, false designation of origin, false advertising, unfair competition, and an increasing of such profits for payment to Aston Martin in accordance with 15 U.S.C. § 1117, and other applicable statutes and laws;

J.    An Order requiring Fisker to pay compensatory damages in an amount as yet undetermined caused by the foregoing acts of infringement, dilution, false designation of origin, unfair competition, and trebling such compensatory damages for payment to Aston Martin in accordance with 15 U.S.C. § 1117, and other applicable statutes and laws;

K.    An Order requiring Fisker to pay Aston Martin's costs and attorney's fees

1    in this action pursuant to 15 U.S.C. § 1117, and other applicable statutes and laws;

2        L.    An Order requiring Fisker to pay Aston Martin punitive damages in an

3    amount as yet undetermined caused by the foregoing acts of Fisker pursuant to

4    California Civil Code § 3294;

5        M.    Restitutionary relief against Fisker and in favor of Aston Martin,

6    including disgorgement of wrongfully obtained profits and any other appropriate relief;

7        N.    An Order requiring Fisker to pay the costs of suit and reasonable

8    attorneys' fees to the extent not specified above; and

9        O.    Other relief as the Court may deem appropriate, including without

10   limitation all remedies provided for in Cal. Bus. & Prof. Code §§ 17200, 17500, *et*

11   *seq.*, and under any other applicable laws.

12

13   Dated: March 26, 2015              **MORRIS POLICH & PURDY LLP**

14

15                                      By:    /s/ Donald L. Ridge

16                                             Donald L. Ridge

17                                      David M. Kelly (Of Counsel)

18                                      Stephanie H. Bald (Of Counsel)
                                        **KELLY IP, L.L.P.**

19

20                                      Attorneys of Record for Plaintiffs
                                        ASTON MARTIN LAGONDA LIMITED and

21                                      ASTON MARTIN LAGONDA OF NORTH

22                                      AMERICA, INC.

23

24

25

26

27

28